[No. C044766. Third Dist. July 30, 2004.]

JON E. RIETVELD et al., Plaintiffs and Appellants, v.
ROSEBUD STORAGE PARTNERS, L.P., et al., Defendants and
Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

---

†Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication
with the exception of parts I through III of the Discussion.

**COUNSEL**

Havens Law Firm and Lyle Havens for Plaintiffs and Appellants.

Law Offices of Hugh Duff Robertson and Vivian M. Lum for Defendants and Respondents.

## OPINION

**NICHOLSON, J.**—Jon and Carole Rietveld sued their former employer, Rosebud Storage Partners, L.P. (Rosebud), alleging breach of contract and fraud. The trial court granted Rosebud's motion for summary judgment, and the Rietvelds appeal. They assert the evidence presented to the trial court shows breach of the implied covenant of good faith and fair dealing and fraud. In addition, the Rietvelds' attorney, Lyle Havens, contends the trial court erred in imposing sanctions on him for failure to participate meaningfully in judicial arbitration. We affirm.

## FACTS AND PROCEDURE

Rosebud runs Armor Mini Storage in Sacramento. Rosebud is a limited partnership, in which defendant Plaza Enterprises, Inc. (Plaza) is the general partner. Hugh Duff Robertson is the president of Plaza.

Jon and Carole Rietveld resided on the property of the storage facility and managed the business. On January 1, 1997, the Rietvelds notified Rosebud that they intended to retire on May 1, 1997.

Robertson asked the Rietvelds to put out the word that Armor Mini Storage was for sale. Jon Rietveld had some experience in valuing storage facilities, so he and Robertson worked together and came up with an asking price of $3.8 million. Public Storage, Sentry Storage, Storage USA, and others immediately showed interest in buying the property. Ben Eisler of Baco Realty toured the facility and submitted an offer for $3.8 million, apparently on behalf of a national chain. The offer letter stated it was a firm offer for $3.8 million with the remaining terms to be negotiated. Eisler's offer was made on March 25, 1997, and expired on March 28, 1997.

When Robertson received the offer letter, he informed Carole Rietveld that she was not to talk to prospective buyers or show them the property or the financials. She was only to notify him that someone was interested. He further stated that he did not want to sell to a national chain.[1] Eisler continued to express his interest in buying the property after the expiration of his offer, at least until April 14, 1997, the date of a note Jon Rietveld sent to Robertson relaying a message from Eisler.

Concerning Eisler's offer letter, Robertson told Carole Rietveld he did not feel it was realistic to provide the information in the timeframe requested

---

[1] Robertson claimed he did not tell Carole Rietveld he would not sell to a national chain. For the purpose of summary judgment review, we credit Carole Rietveld's statement.

in the letter. He also told her that two of his business associates in Los Angeles were vying to purchase the property, which information led her to believe he was not interested in selling the property to Eisler. As a result of discussions with other interested parties, Robertson decided the property could be sold for more than $3.8 million. He made a counteroffer to Eisler, but Eisler was unwilling to pay the higher price. The evidence does not show when Robertson made this counteroffer.

On August 3, 1997, Jon Rietveld entered into an agreement to continue his employment with Rosebud until May 1, 1998, or until escrow for the sale of the property closed. The agreement provided for a payment to Rietveld of $30,000 on May 1, 1998. It also provided for an additional payment as follows: "If we sell the property prior to May 1, 1998, you will receive an additional [$30,000] upon the close of escrow." The agreement also provided that Rosebud would pay the additional $30,000 even if the property did not sell before May 1, 1998, on condition it was sold within one year after that date to a party with whom Rosebud was negotiating before May 1, 1998. The Rietvelds received the first $30,000 payment, which is not at issue in this case, but did not receive the additional $30,000.

In his declaration, Robertson stated Rosebud intended to perform under the contract and tried to sell the property but could not. Ultimately, the property was not sold, even after expiration of the contract between Rosebud and Jon Rietveld.

The Rietvelds sued Rosebud and Plaza, alleging causes of action for breach of contract and fraud.[2] Rosebud and Plaza moved for summary judgment. They argued that the breach of contract cause of action was flawed because the condition precedent (sale of the property) to the payment of the additional $30,000 never occurred. They claimed that the fraud cause of action was without merit because the property was available for sale during the term of the contract and the defendants did not intend to defraud the Rietvelds. Rosebud and Plaza also asserted that neither Carole Rietveld nor Plaza were proper parties to the lawsuit. The Rietvelds opposed the motion, arguing that, even though the condition precedent was not satisfied, Rosebud and Plaza breached the implied covenant of good faith and fair dealing by not selling the property. Concerning the fraud cause of action, the Rietvelds did not make a separate argument against the motion for summary judgment but simply referred to the argument concerning the implied covenant of good faith and fair dealing.

---

[2] The Rietvelds also alleged a common count for labor, which repeated the allegations of the breach of contract cause of action. Since the common count duplicates the breach of contract cause of action, we need not discuss it separately.

The trial court granted the motion for summary judgment. It first determined that Plaza was not a proper party to the contract cause of action but there remained a disputed issue of material fact concerning whether Carole Rietveld was a party to the contract. It concluded that the evidence submitted did not show a breach of the implied covenant of good faith and fair dealing because to conclude otherwise would add a term to the contract that the Rietvelds were entitled to the additional $30,000 simply for finding a buyer. It also found the fraud cause of action was not supported by the evidence, relying on Robertson's declaration that, when the contract was formed, the defendants did not intend to defraud the Rietvelds.

The trial court also ordered Lyle Havens, attorney for the Rietvelds, to pay $2,380 in sanctions for willful failure to participate meaningfully in judicial arbitration. The facts concerning this sanction order are recounted in the discussion, below.

The trial court entered judgment in favor of the defendants on June 16, 2003, and the Rietvelds filed their notice of appeal on August 13, 2003.

## DISCUSSION

### I–III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV

*Sanctions Against Counsel*

On May 3, 2002, this case was ordered to judicial arbitration. The arbitrator set a hearing date of June 13, 2002, at 10:00 a.m. and notified Lyle Havens, counsel for the Rietvelds, that he was required to provide copies of the complaint and answer and a short arbitration brief 10 days prior to the hearing. On June 13, Havens arrived at the arbitration hearing 25 minutes late, having failed to provide the requested copies of the complaint and answer and an arbitration brief.

The Rietvelds did not attend the arbitration hearing and were not available by telephone. During the hearing, Havens did not present any evidence in support of the Rietvelds' claims. Instead, he stated that he agreed with the facts in Rosebud's arbitration brief.

---

*See footnote, *ante*, page 250.

The arbitrator entered an award in favor of Rosebud, also awarding Rosebud its costs. Soon thereafter, Havens filed a request for trial de novo. Rosebud filed a motion requesting sanctions against the Rietvelds and Havens for willful failure to participate meaningfully in judicial arbitration. Havens filed an opposition to the motion for sanctions in which he stated that it was unnecessary to present evidence at the arbitration because judicial arbitration often proceeds in the form of a mediation or settlement conference. He further suggested that the ability to request a trial de novo essentially renders judicial arbitration meaningless. Finding Havens violated a local rule in his conduct with respect to arbitration, the trial court awarded sanctions against Havens, but not the Rietvelds, in the amount of $3,055.50, later reduced to $2,380.00.

Havens contends the sanction order must be reversed because such an award is not permissible based on the willful failure to participate meaningfully in judicial arbitration. He also contends he did not willfully fail to participate meaningfully in arbitration. We find no merit in his contentions.

Code of Civil Procedure section 575.2 allows a court to impose sanctions for noncompliance with local rules. The trial court "may strike out all or any part of any pleading of that party, or, dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party, or impose other penalties of a lesser nature as otherwise provided by law . . . ." (Code Civ. Proc., § 575.2, subd. (a).)

Rule 12.04(A) of the Superior Court of Sacramento County (Local Rule 12.04) provides: "For the willful failure to meaningfully participate in arbitration proceedings the court, on noticed motion, may impose sanctions; including arbitrator's fees, attorney's fees and costs. [¶] (1) The following may be considered failures to meaningfully participate in arbitration: [¶] (a) Non-appearance, at the time set for hearing, of any person necessary to proceed to a meaningful conclusion. (Phone calls to the arbitrator at the time set for hearing will not be deemed an appearance.) [¶] (b) Failure to offer any evidence or rebuttal. [¶] (c) Submission of a motion to continue the arbitration hearing less than five days before the scheduled date, except upon a showing of good cause. [¶] (d) Failure to complete arbitration within the time fixed therefor."(See www.saccourt.com/geninfo/local_rules/PDFChapters/CH12.PDF.)

In its order awarding sanctions, the trial court found that Havens arrived late to the arbitration, failed to provide the pleadings and brief requested by the arbitrator, failed to have the Rietvelds appear or be available by telephone, and failed to produce evidence, including testimony that was necessary to support the Rietvelds' case. Havens asserted that it would have been

futile to produce evidence because the arbitrator determined the contract did not obligate Rosebud to sell the property. The trial court ruled, however, that "[t]his after-the-fact rationalization fail[ed] to explain why Mr. Havens appeared at the arbitration, prior to any determination by the arbitrator concerning the contract, with no evidence whatsoever." The court concluded that Havens's decision not to produce evidence was based on his "belief that mandatory judicial arbitration is an essentially meaningless proceeding for which minimal effort should be made."

■ Havens's conduct with respect to the judicial arbitration violated two parts of Local Rule 12.04 which allows sanctions for willful failure to participate meaningfully in judicial arbitration. He failed to have the Rietvelds appear. Their presence was "necessary to proceed to a meaningful conclusion" because they were witnesses concerning the conduct they alleged in their complaint and because they could have approved any settlement negotiated at the arbitration hearing. Havens also failed to produce evidence. This is especially egregious and showed his lack of good faith because he represented the plaintiffs, who bore the burden of proof in this action.

Havens asserts the Rietvelds could not attend because they resided in Arkansas and were visiting their daughter in Maryland at the time of the arbitration. There is no indication, however, that Havens attempted to procure the presence of the Rietvelds or to reschedule the arbitration to accommodate them. Instead, he claims: "They had nothing to say that they had not already said in their responses to the special interrogatories which were before the arbitrator as an attachment to the defendants' arbitration brief." This statement merely exhibits Havens's failure to take seriously the arbitration hearing. The arbitrator was empowered to make factual findings. Although much of the content of the Rietvelds' testimony may have been included in the answers to interrogatories, the arbitrator should have been given the opportunity to evaluate their testimony and determine their credibility. Furthermore, unlike in the summary judgment proceedings, the arbitrator was not bound to deem the Rietvelds' interrogatory answers credible.

Havens further contends that the provision of Local Rule 12.04 requiring the attendance of those who are "necessary to proceed to a meaningful conclusion" conflicts with state laws which allow litigants to use the subpoena power (Cal. Rules of Court, rule 1613) and permit an arbitrator to go forward with the hearing even if a party fails to attend (Cal. Rules of Court, rule 1610). Havens does not explain the alleged conflict between these rules of court and Local Rule 12.04 and we discern no conflict. Neither of the rules of court state that a party need not attend the arbitration hearing unless subpoenaed.

As he did in the trial court, Havens continues to assert it was unnecessary for him to produce evidence because it was all contained in the attachments to Rosebud's arbitration brief. The trial court responded to this assertion in its order, and Havens offers no reply. The court stated: "It appears to the Court that parole [*sic*] evidence may have been necessary to explain and/or fill in the terms of the contract. Additionally, [the Rietvelds'] allegation in their complaint that they had performed all conditions on their part, including finding and negotiating with the qualified buyers for the property, would require an evidentiary showing by [the Rietvelds]." Havens's retort that all of the evidence was contained in the answers to special interrogatories is of no assistance because, as noted, the arbitration was a factfinding affair and the arbitrator needed to make credibility determinations.

Accordingly, we conclude that the record supports the trial court's conclusion Havens violated Local Rule 12.04 and that Local Rule 12.04 does not conflict with state law.

■ Havens further contends that Code of Civil Procedure section 575.2 does not authorize monetary sanctions and, even if it does, the sanctions imposed here were excessive. Code of Civil Procedure section 575.2, subdivision (a), allows, as a penalty for violation of local rules, striking of pleadings, dismissal of part or all of an action, or "penalties of a lesser nature as otherwise provided by law . . . ." It also allows the moving party to recover fees and costs incurred in making the motion for sanctions. (*Ibid.*) Monetary sanctions are penalties of a lesser nature than dismissal. And, Local Rule 12.04 provides for monetary sanctions to recompense fees and costs. The award here was based on the fees and costs Rosebud incurred in arbitration and in making the motion for sanctions. Thus, the award was provided for by law.

Havens's argument that the award was excessive is also without merit. He complains "the amount of sanctions awarded is grossly and unfairly excessive, representing an entire month's income for an attorney who represents the indigent such as plaintiff's counsel in the instant case, and this one month's income is to compensate for a one hour arbitration hearing, and is fully 10% of the damages demanded in the complaint." He then goes on to assert that arbitrators only receive $150 per hour and that judicial arbitration is not binding. Nonetheless, he does not dispute the fact that the sanction award was based on Rosebud's fees and costs incurred in arbitration and in making the sanctions motion, which totaled $3,055.50, later reduced to $2,380. It was not excessive, under the circumstances.

## DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and Davis, J., concurred.